**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TRUSTEES OF THE OHIO
BRICKLAYERS PENSION FUND, et al.,                    Case No. 1:13-cv-66

        Plaintiffs,                                        Bowman, M.J.

    v.

MIRAGE CAULKING, INC., et al.,

        Defendants.


**MEMORANDUM OPINION AND ORDER**

On January 30, 2013, Plaintiffs, through counsel, filed suit against Defendants under the Employee Retirement Income Security Act, 29 U.S.C. §1132 et seq. ("ERISA"). Plaintiffs are the Trustees of the Ohio Bricklayers Pension Fund, the Ohio Bricklayers Health and Welfare Fund, and the Bricklayers and Trowel Trades International Pension Fund (hereinafter collectively "Plaintiffs" or "Funds").[1] Defendant Mirage Caulking, Inc. ("Mirage") is engaged in the construction industry in the Greater Cincinnati area, and has employed persons represented by the International Union of Bricklayers and Allied Craftworkers (the "Bricklayers Union"). Defendant Willie Reeves is the principal owner of Mirage.

Plaintiffs' complaint originally sought a judgment for delinquent fringe benefit contributions (Count I), an audit of Mirage's books and records from January 1, 2010 through the present (Count II), judgment on alleged unaccounted cash payments (Count III); and judgment on a cognovit note signed by Willie Reeves (Count IV). After the date

---

[1]A prior fund entity, known as the Greater Cincinnati Health and Welfare Fund, merged with the Ohio Bricklayers Health and Welfare Fund effective January 1, 2008.

that the complaint was filed, an audit of Mirage's books was completed for the period of January 1, 2010 through December 31, 2012.   According to Plaintiffs, that audit revealed a delinquency for the audited period, providing additional support for Plaintiffs' claim under Count I. However, Mirage denies that it is bound by the collective bargaining agreement ("CBA") as alleged in the Complaint, and denies that the employees for whom contributions are sought are covered employees under the CBA.

On January 2, 2014, Plaintiffs' filed a motion seeking partial summary judgment on the issue of whether Mirage is bound by the CBA, and on the secondary issue of whether the employees for whom contributions are sought are covered employees. Asserting that the answer to both questions is affirmative, Plaintiffs request that judgment be entered in their favor on Count I, in the amounts supported by the recently conducted audit.  Plaintiffs further request judgment on Count II, insofar as they seek an additional audit of Mirage's books from January 1, 2013 through the present.  For the reasons that follow, the Court will grant Plaintiffs' motion.

## I. Background

Plaintiffs have filed Proposed Undisputed Facts. (Doc. 21). The Court adopts those facts to the extent that they are expressly admitted by Defendants.  (Doc. 30).  To the extent that material facts are disputed, they have been construed in favor of the Defendants.

Willie Reeves signed the 2001-2004 Collective Bargaining Agreement ("CBA") on behalf of Mirage on August 1, 2002.  That CBA covered all defined bricklayer work performed within the Bricklayers Union's jurisdiction.  Article 35 of the 2001-2004 CBA states in relevant part:

....Such voluntary changes as may be desired by either or both parties hereto shall be submitted in writing, and in detail, not less than sixty (60) days prior to the expiration of this Agreement; otherwise this Agreement shall continue in full force and effect from year to year in the absence of a similar notice. This Agreement shall be effective when signed by the individual Employer and the Union, and shall remain in force in accordance with the terms of this Agreement.

By execution of this Agreement the Employer authorizes the Mason Contractors Association of Cincinnati to act as its collective bargaining representative for all matters relating to this Agreement. The parties agree that the Employer will hereafter be a member of the multi-Employer bargaining unit by said Association unless this authorization is withdrawn by written notice to the Association and the Union at least sixty (60) days prior to the current expiration dates of the Agreement.

All intervening CBAs through the 2012-2017 CBAs contain the same provision. Reeves testified that at some indefinite point in time, he gave verbal notice to one of two Union representatives that Mirage was not signing an extension of the 2001-2004 CBA, but he never sent a written Notice of Termination either to the Bricklayers Union or to the Mason Contractor's Association of Cincinnati ("Cincinnati Association"). (Doc. 19-1, Reeves Depo., at 30-33).

In addition to the above provision regarding changes or termination, the CBA signed by Reeves contained, in Articles 8 and 9, agreements for the Employer to contribute to a Health & Welfare Fund and to various Pension Funds. Through June of 2011, Mirage continued to submit monthly fringe benefit reports to the Plaintiff Funds. With each contribution paid, Mirage submitted a form that stated that submission and payment was "in accordance with the obligations assumed by the firm under the current applicable collective bargaining agreement and the provisions of the applicable trust agreements." (Doc. 19-1, Exhibit 4). Mirage also continued to withhold union dues from the paycheck of Kelly Nolan until June of 2011.

3

Mirage's employee, Kelly Nolan, has been employed exclusively by Mirage as a caulker. In addition, employees Michael Storer, David Bollinger, Jerome Edwards, Jeffrey A. Francis, Nikolay Sinenko and Brian Speed were all employed by Mirage as bricklayers. Caulking work and bricklayer work are defined as covered work in the applicable Collective Bargaining Agreements of the International Union of Bricklayers and Allied Craftworkers.

The Bricklayers Union and the Cincinnati Association have negotiated several Collective Bargaining Agreements since the 2001-2004 CBA signed by Reeves. The most recent CBA will expire on May 31, 2017.

## II. Analysis

### A. Standard of Review

On summary judgment, a court must determine whether there is any genuine issue as to any material fact in dispute. *See* Rule 56(c), Fed. R. Civ. P. In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.* In this case, summary judgment

4

should be granted to the Plaintiffs based upon the uncontested evidence filed in support of their motion.

**B. Defendant's Motion**

**1. The Validity of the Evergreen Clause**

Plaintiffs rely on Article 35 of the 2001-2004 Local Union 18/2 CBA, signed by Reeves and set forth above, to argue that successor CBAs, entered into after the 2001-2004 CBA, are equally enforceable against the Defendants. As referenced above, Article 35 of the CBA that Reeves signed clearly states that changes "shall be submitted in writing, and in detail, not less than sixty (60) days prior to the expiration of this Agreement," and that in the absence of such writing, "this Agreement shall continue in full force and effect from year to year…." Article 35 also provides that "[t]he parties agree that the Employer [Mirage] will hereafter be a member of the multi-Employer bargaining unit by said Association unless this authorization is withdrawn by written notice to the Association and the Union at least sixty (60) days prior to the current expiration dates of the Agreement." In other words, the latter provision states that Mirage became a member of the Cincinnati Association for purposes of the 2001-2004 CBA, and that the Cincinnati Association thereafter was authorized to bargain collectively on Mirage's behalf.

The language of Article 35 is referred to as an "evergreen clause." Similar clauses consistently have been upheld as legally valid and enforceable in the Sixth Circuit. "When a contract is renewed via the operation of an evergreen clause, all of the attendant contractual obligations naturally continue for the period of renewal." *Trustees of the B.A.C. Local 32 Ins. Fund v. Fantin Enterprises, Inc.*, 163 F.3d 965, 968-69 (6th

Cir. 1998); *see also Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998); *Trustees of Painting Indus. Ins. Fund v. Pharaoh Glass Systems, Inc.*, 2008 WL 276412 at *4 (N.D. Ohio Jan. 31, 2008)(citing *Apfel* and *Fantin* for proposition that "[b]oth the United States Supreme Court and the Sixth Circuit Court of Appeals have found that evergreen clauses in CBAs are legally valid and enforceable.").

Plaintiffs persuasively argue that because Mirage did not comply with the express terms of the evergreen clause by providing written notice of termination at least sixty days prior to May 31, 2004 (or any subsequent year), then Mirage continued to be bound by all of the CBAs that the Cincinnati Association negotiated on its behalf. Even though the 2012-2017 CBA that is currently in effect is not signed by Reeves or another representative of Mirage, Mirage remains bound under its prior assignment of bargaining rights to the Cincinnati Association.

The Court agrees that the reasoning of *Fantin* applies fully to the case presented. The current CBA contains the same type of evergreen provision and specifies that Mirage will remain a member of the Cincinnati Association unless authorization is withdrawn by written notice given to the Cincinnati Association and the Union at least sixty days prior to May 31, 2017. (See generally Article 35 of 2001-2004 CBA; Article 36 of 2004-2007 CBA; Article 36 of 2007-2010 CBA; Article 37 of 2010-2011 CBA; Article 37 of 2012-2017 CBA; Hubbard Affidavit, Exhibit F). To date, Defendants have yet to provide the type of written notice of termination that is expressly required under Article 35 and successive clauses of the referenced CBAs, to which Defendants previously agreed to be bound.

Defendants argue that Plaintiffs and/or their agents had "actual, constructive notice of Mirage's intent not to be a party to the CBA" after the expiration of the 2001-2004 CBA, despite the lack of written notice, based solely upon the verbal notice to which Reeves testified. (Doc. 29 at 3). However, Defendants offer no factual or legal defense to the body of case law, including *Fantin*, that holds that the inclusion of a contractual evergreen clause is valid and enforceable. Moreover, Defendants fail to offer any factual or legal explanation why the express grant of authority to the Cincinnati Association to act as Mirage's Collective Bargaining Representative in the future, and Mirage's agreement that it would "hereafter be a member of the multi-Employer bargaining unit by said association" absent written notice of withdrawal, should not be enforced by this Court as a valid and binding contract.

While Reeves's testimony was somewhat equivocal as to the timing of his alleged verbal notice of non-renewal to one of two Union representatives, he admitted that he never gave any notice to the Cincinnati Association to terminate its authority to act as Mirage's agent for purposes of the CBA (as required under the 2001-2004 CBA). He also never provided written notice to the Cincinnati Association or to the Union that he intended to terminate Mirage and not be bound by the successor CBAs.

The Sixth Circuit has held that language terminating the authority to negotiate a CBA must be clear and explicit. *Office & Professional Employees Int'l Union, Local 42 v. United Automobile, Aerospace & Agricultural Implement Workers of America, Westside Local No. 174, UAW*, 524 F.2d 1316, 1317 (6th Cir. 1975). As a matter of law, Reeve's alleged verbal notice to a Union representative does not satisfy that standard. The affidavit of Fred Hubbard (Doc. 21-1) and attached copies of the CBAs

7

provide evidence of the successive CBAs entered into by the Union and the Cincinnati Association. As a member of the latter entity, Mirage remains bound by those CBAs, unless and until Defendants issue the requisite written notice of termination.

Defendants alternatively argue that Plaintiffs have failed satisfy their burden under Rule 56 that no material facts exist concerning the enforceability of the subsequent CBAs. For example, Defendants suggest that Plaintiffs themselves have failed to prove that they complied with the "written changes only" provision of Article 35. In other words, Defendants suggest that if any of the post-2004 CBAs that are alleged to be binding on Mirage contained any changes from the 2001-2004 CBA signed by Reeves, then in order to gain summary judgment Plaintiffs would need to prove that those changes were submitted in writing not less than sixty (60) days prior to the expiration of the prior CBA. Defendants do not contend that there were any changes, or that any changes were not made in accord with Article 35; they instead merely argue that Plaintiffs must offer proof on this issue. Using the same logic, Defendants assert that to the extent that material language of the successive CBAs was not changed, then Plaintiffs are required to prove that fact.

Defendants offer no authority for this alternative argument other than a general citation to Rule 56, Fed. R. Civ. P. In their reply, Plaintiffs contend that the argument simply is not relevant, in part because Mirage authorized the Cincinnati Association to negotiate on its behalf and never revoked that authority. There is no evidence that Cincinnati Association ever challenged the successor CBAs as not properly modified (even assuming that they were modified). The Court agrees that the argument is not material in the context of the record presented. The issues presented by the motion are

whether: (1) the evergreen clause is valid and enforceable; (2) Defendants provided written notice of termination; (3) Defendants had covered employees and violated the CBAs. Defendants cannot defeat the motion by attempting to create a factual issue out of thin air that has never previously been presented, and as to which Defendants offer only a speculative theory that an issue *may* exist, without so much as the slightest evidence to suggest that a material factual dispute does exist (or citation to authority that they would have standing to present it).

### 2. Prior Course of Conduct

In addition to the evergreen clause, Plaintiffs argue that Mirage is bound to comply with the CBAs based upon its prior course of conduct. Plaintiffs rely upon several cases, including *Michigan Bricklayers & Allied Craftsmen Health Care Fund*, 116 F.3d 1480 at *2 (6th Cir. 1997)(Table, text available on Westlaw), to argue that Mirage remains bound by successor agreements to the 2001-2004 CBA, because Mirage continued to withhold union dues, and prepared and submitted contribution reports to the union that were equivalent to the rate listed in the CBA. Plaintiffs argue that for the same reasons that the Sixth Circuit held that the defendant was bound in the *Michigan Bricklayers* case, so too is Mirage liable in this case. Mirage submitted monthly contribution reports reflecting the current union rates for each Fund, and submitted those reports through June of 2011 before stopping their submission. Reeves repeatedly signed certification language similar to that in *Michigan Bricklayers*, stating that the forms were being submitted "in accordance with the obligations assumed by this firm under the current applicable collective bargaining agreement and the provisions of the applicable trust agreements." (Reeves Depo Ex. 4). The fact that

Mirage continued to withhold Union dues for Kelly Nolan up to January of 2011 provides additional evidence that Mirage acted in accordance with the CBAs.  Although Reeves testified that he was withholding those dues in trust in the event that Nolan decided to reinstate his dues with the Union, that explanation is inconsistent with Mirage not being a party of the CBA.  If Mirage were not bound to the CBA, Mirage would not have the legal authority to withhold Union dues, and would not be able to submit them to the Union on Nolan's behalf.

As discussed, the Court finds the interpretation of the evergreen clause under *Fantin* to be controlling in this case.  However, the Sixth Circuit's reasoning in *Michigan Bricklayers* and similar cases supports an additional conclusion that Defendants' course of conduct confirmed the extension of the successive CBAs, and the willingness to be bound by those agreements at least through June 2011.  *See also Ohio and Vicinity Regional Council of Carpenters v. Greg Constr. Co.*, 433 F. Supp.2d 862, 865 (N.D. Ohio 2006)(employer's conduct supported "implied acceptance" of successive CBA); *Silveri*, 78 F. Supp.2d at 683, n. 15 (finding Defendants' argument to be "specious in light of the fact that the record evidence…establishes that Defendants routinely paid the Funds shortly after covered work was done at whatever rate was in effect at the time they made Fund contributions.").

### 3.  Whether the Identified Employees are Performing Covered Work

Four specific employees were identified by the Funds' auditor as covered employees to date:  Kelly Nolan, Michael Storer, David Bollinger, and Jerome Edwards.  The CBA specifically defines covered work as including caulking work and bricklaying.  Kelly Nolan testified that the only type of work he performed was caulking work; Reeves

similarly testified that Nolan performed caulking work.  The testimony concerning Storer, Bollinger, and Edwards also confirms their work as bricklayers,[2] which work is also described as covered work by the CBA.  During his deposition, Reeves admitted that three additional employees (Jeffrey A. Francis, Nikolay Sinenko, and Brian Speed), all of whom were listed on fringe benefit reports submitted by Mirage, also were employed as bricklayers.

The CBAs contain language that requires contributions to be paid for "each Employee covered by this Agreement," and Article 4 of the 2001-2004 CBA specifically provides for the Agreement to cover "all bricklayers, pointer-cleaner-caulkers, and stone masons['] work falling within the jurisdiction of the Union…."  In other words, all employees who perform covered work are covered by the CBA regardless of whether they are members of the Union, so long as they fall "within the jurisdiction" of the Union.

Reeves testified, essentially, that he did not believe that the CBA applied because Mirage was not a "union" business and did not have covered union employees. However, Plaintiffs have submitted the affidavit of the auditor, who found "no exceptions" to the determination that the referenced employees would fall "within the jurisdiction" of the Union based upon the work performed.  Defendants do not dispute this interpretation of Article 4 of the CBA, which is supported by the case law cited by Plaintiffs.  *See Fantin*, 163 F.3d at 967-968, 970 (written notice that individual employees were terminating their affiliation as Union members did not serve to terminate the CBA, which required continued contributions, because employer was

---

[2]Reeves testified that Edwards, his nephew, performs work as a bricklayer, but also "can" perform work as a caulker to help out.  (Reeves Depo. at 25).

11

obligated to remit contributions for each employee regardless of Union status); *see also Trustees of B.A.C. Local 32 Ins. Fund v. Silveri,* 78 F. Supp.2d 670, 678 (E.D. Mich. 2000).

In response to Plaintiffs' argument, Defendants object only to Plaintiffs' citation to the affidavit of the auditor, arguing that he is not qualified to determine which employees are allegedly covered by the CBA.  However, as Plaintiffs point out in their reply, the classification of the covered employees is not based solely on the auditor's affidavit, but instead is irrefutably confirmed by the deposition testimony of both Nolan and Reeves who confirmed the referenced employees' work as caulking and bricklaying. Defendants offer no evidence to contradict that testimony.

### 4.  Judgment to be Granted

In sum, the Court concludes that there is no issue of material fact and that Defendant Mirage remained bound by the successor CBAs that followed the expiration of the 2001-2004 CBA, based upon Mirage's course of conduct, the existence of the valid evergreen clause, and the lack of any valid written termination either of Mirage's membership in the Association or of the Defendants' participation in the CBA. Additionally, there appears to be no issue of material fact concerning whether the referenced employees were covered employees under the CBA.

Defendants' response in opposition challenges only the underlying issues (whether Mirage remains bound by the CBAs and whether the employees performed covered work).  Defendants do not directly challenge the calculation of the amounts that Plaintiffs seek in judgment, which sums are based upon Plaintiffs' recent audit.  For the reasons previously expressed, and because no dispute has been presented concerning

the mathematical calculations resulting from the audit, the Court agrees that partial judgment should be awarded in the amount of $62,975.12.

In addition to the sum calculated from the prior audit, Plaintiffs seek an additional audit of Mirage's books and records beginning January 1, 2013 and continuing through to the present. Plaintiffs seek a prospective judgment "for any additional sums which Mirage may become obligated to pay as discovered by audit and/or that are incurred between the date of the filing of the Complaint…and that date of judgment together with liquidated damages, interest, costs and Plaintiffs' reasonable attorney fees." (Doc. 22 at 16). Unlike the sum determined from the prior audit, the Court declines to enter a prospective judgment in an undetermined future amount. There is no basis for finding that Defendants have waived their right to challenge any future calculation, including but not limited to the amount of reasonable attorney's fees.

### III. Conclusion and Order

For the stated reasons, **IT IS ORDERED** that Plaintiffs' motion for partial summary judgment (Doc. 22) be **GRANTED** and that judgment on Count I of Plaintiffs' claim be entered against Defendants in the amount of $62,975.12. Judgment is also rendered on Count II, to the extent that Mirage shall submit to an audit of its books by Plaintiffs' representatives beginning January 1, 2013 until the present time.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge